642 So.2d 609 (1994)
SECTION 28 PARTNERSHIP, LTD., a Florida limited partnership, Appellant,
v.
MARTIN COUNTY, a political subdivision of the State of Florida, Appellee.
No. 93-0747.
District Court of Appeal of Florida, Fourth District.
September 9, 1994.
Rehearing Denied November 15, 1994.
Charles L. Siemon and Marcella Larsen of Siemon, Larsen & Marsh, Boca Raton, for appellant.
Noreen S. Dreyer, Co. Atty., and Gary K. Oldehoff, Asst. Co. Atty., Stuart, for appellee.
David J. Russ, Asst. Gen. Counsel, Tallahassee, for amicus curiae-Florida Dept. of Community Affairs.
PER CURIAM.
Martin County refused to approve an application to amend its Comprehensive Growth Management Plan and Future Land Use Map so that Section 28 Partnership Ltd.'s parcel of land could be developed as a planned unit development (PUD). The partnership sought certiorari relief in the circuit court, which was denied, and we treat partnership's appeal to this court as a petition for writ of certiorari. City of Deerfield Beach v. Vaillant, 419 So.2d 624 (Fla. 1982). We conclude that the decision of the county, declining to amend the plan, was legislative rather than quasi-judicial, and that the trial court did not err in concluding that certiorari review was not available. See, generally, Board of County Comm'rs of Brevard County v. Snyder,[1] 627 So.2d 469 (Fla. 1993).
*610 This land is situated at the headwaters of the Loxahatchee river, which has been designated as a National Wild and Scenic River by the National Park Service. It is also bordered on two sides, north and west, by Jonathan Dickinson State Park, a nature preserve which appears, from the following map, to be approximately 15 times as large as the section of land involved here.
*611 
*612 The land, 638 acres, is presently designated rural, agricultural and ranchette, with 180 to 200 residential units permitted. The amendments sought were for a PUD consisting of 810 units, a golf course, a clubhouse, and 50,000 square feet of retail and office use.
In Snyder the supreme court held that a zoning decision is reviewable by certiorari, as the review of a quasi-judicial act rather than legislative act if: (a) it affects a limited number of property owners; (b) the outcome is contingent on facts presented at a hearing; and (c) it is viewed as the application, rather than the setting, of policy. The Snyder court noted that it is the character of the hearing that determines whether the action is quasi-judicial or legislative. Snyder, 627 So.2d at 474. However, it is clear that in Snyder the court also recognized that it was a significant factor that the proposed zoning was consistent with the existing plan. 627 So.2d at 471, 475.
The Snyder decision  recognizing that a landowner has a constitutional right to use property in a manner consistent with preexisting government plans, absent clear evidence of a conflicting public necessity justifying a more restrictive use  applies "strict judicial scrutiny" to government action that denies or abridges that right. In contrast, the adoption of planning policy by a board constitutes legislative action, which is reviewable only by the broader "fairly debatable" standard. Id. at 473-74.
We take the Snyder court's pronouncement, that it is the "character of the hearing" that determines whether the action taken is legislative or quasi-judicial, to mean that the trial court's initial task is to examine whether the action complained of results in the formulation of a general rule of policy, or in the application of such a rule. We agree with the trial court's conclusion that here the county was formulating policy.
The property lies in an area which, under the Martin County comprehensive plan, does not qualify for public water, sewer or other urban facilities necessary for development. The application would require the amendment of the plan to provide for a new category to be designated as "Adjacent County Urban Service Areas" (ACUSA), which could be developed by using facilities from an adjacent county. These services are potentially available from Palm Beach County, which adjoins this property on the south.
We conclude that the county's decision not to amend the comprehensive plan to allow ACUSAs was a legislative or policy making decision under Snyder. We come to that conclusion because an ACUSA would be a new classification of property which is not presently in the comprehensive plan, and thus a "formulation of a general rule of policy". Snyder, 627 So.2d at 474. It would not be the application of policy because there are no provisions under the existing plan for the creation of ACUSAs.
The development would also require an amendment to the comprehensive plan because the density in the proposed use was inconsistent with the plan. Partnership's position is that this is a "site specific, ownerinitiated rezoning" request, which is policy application, not policy making, citing Lee County v. Sunbelt Equities, 619 So.2d 996 (Fla. 2nd DCA 1993). The fact that it is site specific, however, is not necessarily determinative of the issue. As our supreme court stated, "comprehensive rezonings affecting a large portion of the public are legislative in nature". Snyder, 627 So.2d at 474.
Although the size of this section of land (a square mile), in and of itself, does not necessarily determine whether the amendment would be legislative, this property is bordered on two sides by Jonathan Dickinson State Park and the Loxahatchee River Preserve Area. Considering the pristine nature of the land in the park and around the river, the size of the park, and the use of it by the public, we conclude that the changes sought here involve matters of policy, subject to review under the fairly debatable standard, not certiorari review in the circuit court.[2]
We deny certiorari.
*613 DELL, C.J., and KLEIN, J., concur.
STONE, J., concurs specially with opinion
STONE, Judge, concurring specially.
I concur in the opinion but add and emphasize that I would deem the commission's decision to be legislative in nature even without regard to the factors noted in our opinion, the absence of an ACUSA provision in the existing plan text and the public interest in the use permitted for this parcel because of its unique location. It should be considered legislative because generally, in my judgment, there is no reason to treat a commission decision rejecting a proposed modification of a previously adopted land use plan as any less legislative in nature than the decision initially adopting the plan.
NOTES
[1] In Quasi-Judicial Rezonings: A Commentary on the Snyder Decision and the Consistency Requirement in Journal of Land Use & Environmental Law, Vol. 9, Number 2 (Spring 1994), Florida State University College of Law, Thomas G. Pelham has given an excellent analysis of the supreme court's opinion in Snyder, the significant opinions of Florida's district courts of appeal prior to Snyder and their significance in light of Snyder, and questions unresolved by Snyder.
[2] Our recent opinion in Florida Institute of Technology, Inc. v. Martin County, 641 So.2d 898 (Fla. 4th DCA June 22, 1994), is distinguishable. In that case the county had previously amended the comprehensive plan for a prior owner, and the present owner was seeking to develop the property consistent with the prior amendments. The use sought was thus was policy application.